UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

TRAVIS GLASS,

    Plaintiff,

v.   Case No. 1:21-cv-00543 JCH-JHR

XTO ENERGY, and TOMMIE CRIDDLE,
individually and as agent of XTO Energy,

    Defendants.

### DEFENDANT XTO ENERGY INC.'S MOTION TO DISMISS FOR DISCOVERY ABUSES AND FAILURE TO PROSECUTE

Plaintiff Travis Glass ("Glass") filed the above-referenced lawsuit over twenty months ago, asserting claims against Defendants XTO Energy Inc. ("XTO") and Tommie Criddle for tortious interference with an alleged employment contract[1] and retaliatory discharge. Since that time, Glass has been lackadaisical, at best, or dilatory, at worst, in litigating the lawsuit he initiated. His discovery responses are wholly deficient and he has failed to conduct any discovery himself, despite the fact that his claims against XTO are utterly frivolous and he has claimed a need to conduct further discovery to determine the proper parties at least twice. XTO now moves the Court pursuant to Federal Rules of Civil Procedure 37(d) and 41(b) to dismiss this proceeding with prejudice as a sanction for Plaintiff's discovery abuses and failure to prosecute. The grounds for this Motion are more particularly set forth below.

---

[1] The alleged employment contract was between Glass and TRC Construction. Dkt. 40 ¶ 7. XTO did not employ Glass or Tommie Criddle. Dkt. 41 ¶ 9.

I.     **Relevant Background**

A.     **Glass has wholly failed to prosecute the lawsuit he initiated, which is sanctionable.**

On April 16, 2022, XTO served its initial discovery requests on Glass. *See* Dkt. 20. Glass failed to respond timely to XTO's discovery requests – thus having waived any objections to the requests and admitted XTO's requests for admission. On May 21, 2022, Glass' counsel acknowledged Glass missed the deadline to respond to XTO's discovery requests and requested an extension until June 3, 2022, to provide Glass' responses. XTO granted the extension. *See* Exhibit A.

But June 3 came and went with no response from Glass, and no response still three months after that. Accordingly, XTO sent a discovery deficiency letter to Glass on September 12, 2022, warning Glass that it intended to move to compel responses and a deposition date for Glass. *See* Exhibit B. Nonetheless, Glass still did not respond to XTO's discovery requests, so XTO prepared to move for dismissal of Glass' claims due to his utter lack of prosecution of such claims.

Following a telephone conversation with Glass' counsel on October 31, 2022, wherein Glass' counsel detailed certain personal circumstances that had been affecting his ability to perform his work, XTO's counsel sympathetically agreed that XTO would wait to file the motion to compel if Glass provided discovery responses within the week. *See* Exhibit C. Again, though, Glass failed to provide the promised responses. So again, on November 8, 2022, XTO threatened to file the drafted motion to compel. *Id.* Glass' counsel asked if XTO's counsel if they would wait one more day. They did. *See* Exhibit D.

Finally, about seven months after XTO served its initial discovery requests on Glass, on November 9, 2022, Glass provided "responses" to XTO's requests, though the responses were largely deficient. *See* Exhibit E. For example, Glass answered "I don't remember" to at least 6

interrogatory subparts, including interrogatories simply about his pay at other jobs or other verifiable facts, and "[n]one in my possession" to at least 20 requests for production, including requests for documents that would plainly be retrievable by Glass, such as his paychecks, paystubs, tax forms, or any documents about his allegations. Indeed, Glass testified at his deposition that he likely has access to a wide variety of evidence about this case, he simply is computer illiterate and would need to ask his wife to help him. It is wholly unclear why he did not ask his wife to help him in the first place if that is the case; to be sure, his wife sat in the same room as Glass during his deposition despite XTO's request that she be excluded. On January 4, 2023, XTO sent another deficiency letter to Glass demanding that Glass access his bank accounts and/or email account to provide, by January 6, 2023, at 10 a.m. Mountain, and provide all information that demonstrates from whom Glass has received income, the total amount of that income, and the dates such income was received beginning from the time he was employed by TRC until present day. See Exhibit K.

Despite the wholesale non-responses received as to XTO's discovery requests after seven months waiting on them, XTO agreed to press forward by scheduling Glass' deposition, as XTO could afford no further delays due to Glass dilatory litigation strategy, having already received two prior extensions to ostensibly allow Glass to conduct discovery (note: Glass still has served zero discovery requests and zero deposition notices). And, on December 23, 2022, XTO finally deposed Glass.

At his deposition, Glass reiterated the utter lack of evidence he has to support any of his claims against XTO and, in fact, put the nail in the proverbial coffin regarding any of his claims against XTO. See Exhibit F. The following are some of the most apposite examples:

> Q. So when you're saying he must be the boss for XTO, that's you speculating based on Tommie's role at the yard; is that right?
> A. I guess if you want to put it that way, I'll agree to that.

[40:16-20]
***

Q. Please let me finish my question. Have you ever seen a contract between Tommie Criddle and XTO?
   A. No, ma'am.
Q. And you've never personally seen any sort of paperwork between Tommie Criddle and XTO, correct?
   A. No, ma'am.

[41:16-21]
***

Q. And do you know if Tommie Criddle was an employee of Integrity Inspection Solutions?
   A. I do not know who Tommie worked for on third-party.

[42:14-17]
***

Q. And when you applied -- or when you began working for TRC, did you disclose that you had diabetes?
   A. No, ma'am.
Q. Did you ask for permission or seek an accommodation to bring Little Dog with you to work for TRC?
   A. No, ma'am.
Q. So you just brought her to work with you and that was that?
   A. Yes, ma'am.

[48:22-49:5]
***

Q. Okay. And then did you ever tell anyone at XTO that you had diabetes?
   A. No.
Q. Did you tell anyone at XTO that you had a disability?
   A. No. Or I say no, not at this point.
Q. Okay. What do you mean? You mean that you did at some time?
   A. Yes, I did, later on.
Q. When did you tell -- or who did you tell at XTO that you had diabetes or a disability?
   A. Tommie Criddle.
Q. Is there anyone else that you believe worked for XTO that you told you had diabetes or a disability?
   A. I believe I told the engineer or one of her people. I don't remember who it was.

XTO's Motion to Dismiss for Discovery Abuses and Failure to Prosecute 4

> **Q. So did you tell the engineer or did you tell one of her people? I'm confused.**
>> A. I don't remember. I spoke to one of them.
>
> **Q. Okay. How do you remember speaking to one of them if you don't remember who you were you speaking to?**
>> A. Because I called one of them and told them that I had just been run off over my service dog and they didn't want to hear it.

[49:13-50:11]

***

> **Q. And is it your understanding that Tommie Criddle made the decision to have you taken off-site?**
>> A. Tommie Criddle is who told us it's -- in my opinion, it was probably somebody higher up.
>
> **Q. So you have no personal knowledge of any sort of conversations like that, correct?**
>> A. No, ma'am.

[57:3-9]

***

> **Q. And when you say that you've dealt with him through Tommie Criddle, what do you mean by that?**
>> A. I'm assuming Tommie Criddle works for Integrity because you're asking questions about it. I don't know who Tommie worked for.

[58:9-13]

***

> **Q. And you're not alleging that you were an employee of XTO, correct?**
>> A. I was working for XTO by a third-party.
>
> **Q. Meaning you were employed by TRC, and TRC subcontracted with XTO?**
>> A. Yes, ma'am.

[62:18-23]

Summed up, Glass testified: (1) he does not know who employed Tommie Criddle—he simply speculates it was XTO; (2) Glass himself did not work for XTO; (3) Glass never told anyone at XTO he had diabetes and/or a disability until after such time as his employment was terminated by TRC (even then, he does not know who he told); and (4) Glass has no idea who

made the decision to terminate him or why—he simply speculates it was because of his disability. Based on Glass' deposition testimony in these respects, failing to dismiss XTO from this suit immediately would be sanctionable, as Glass' claims against XTO are plainly frivolous. Notably, the Court's prior order on Glass' Motion to Amend suggests the Court would be open to entertaining such a motion at this time. *See* Dkt. 39 at 6-7.

> **B.     Glass requested to move the scheduling conference and amend the scheduling order under the auspices of needing to conduct more discovery, but he failed to conduct any discovery at all.**

Meanwhile, in the midst of XTO's myriad attempts to secure discovery responses from Glass, Glass requested to move the first scheduling conference, which the Court had previously scheduled for June 22, 2022, under the auspices of needing to conduct more discovery. Specifically, XTO yet again informed Glass in June 2022 that XTO never employed Criddle, and, accordingly, XTO played no part in Glass' employment or his alleged termination. In response to this fact, of which Glass had been made keenly aware for over a year, Glass proposed postponing the settlement conference to "do some discovery or get disclosures" to answer the question of who, in fact, employed Criddle. *See* Exhibit G. XTO stated it was prepared to go forward with the conference, but also noted it would comply with the preference of the Court with regard to rescheduling, which the Court did following a brief status conference on June 9, 2022. *See* Doc. 22.

Following the postponement of the Court's scheduled settlement conference, Glass' counsel sent an email as follows:

> Charlotte, not asking you to prove a negative that Criddle didn't work for you, but in light of my client, his coworker and Criddle's linkedin page, can you send me anything that shows he did not work for you and/or worked for another company that had him on the jobsite? I need to nail this down asap in light of the applicable court deadlines and applicable SOL.
>
> Thank you
>
> Tim White
>
> **Everybody counts or nobody counts**
>
> Timothy L. White - Attorney
> Valdez & White Law Firm, LLC

See <u>Exhibit H</u>.  Counsel for XTO responded:

> Good Afternoon Tim:
>
> We are willing to provide a declaration from XTO's HR department that states XTO never employed Criddle. Will that suffice? That may be the best we can do because, in fact, XTO never employed him. Also, XTO reached out to Criddle last week and asked him to remove the fabricated statement on his Linked In page that he was/is an employee of XTO, and he removed it immediately. Please advise.
>
> Best regards,
>
> Charlotte
>
> **Charlotte Lamont**
> Shareholder
> 505.944.9682 direct, 505.379.6057 mobile, 505.213.0415 fax
> CLamont@littler.com

*Id.*  Glass' counsel responded:

> Charlotte
> Can XTO identify who his employer was then? Its their jobsite, and based on what my client and other TRC employees have said, if Cribble wasn't there as an XTO employee he has to be there for a subcontractor, he clearly acted as if he had authority to tell Travis to leave if he insisted on having his service dog, so he was acting as an agent whether he was an employee or not. But I not going to waste time and money suing XTO if they don't belong in this lawsuit, nor violate our ethical rules in that context. So if you can get me a sworn statement setting out the facts as XTO alleges, that should answer the question.
>
> **Everybody counts or nobody counts**
>
> Timothy L. White - Attorney
> Valdez & White Law Firm, LLC

*Id.*

Relying on Glass' counsel's stipulation that he would not "waste time and money suing XTO" if it is not a proper defendant in order to not "violate our ethical rules in that context," XTO provided a sworn statement from its Human Resources Manager Rich Hagen setting out the facts precisely as Glass requested. *See* Exhibit I. Specifically, Mr. Hagen testified:

- XTO never employed a person named Tommie Criddle to work at a site in New Mexico, or anywhere else.
- Based on information and records available to XTO, in 2019 Tommie Criddle was employed by Integrity Inspection Services, an entity that provided pipeline inspection services to XTO.
- Tommie Criddle was never an agent of XTO and never acted as an XTO manager or supervisor.

*Id*.

But XTO did not receive the anticipated agreement to dismiss XTO from this suit. Instead, without comment on the Hagen declaration, Glass' counsel sent a proposed motion to further amend the complaint, asking XTO's position on the same. *See* Exhibit J. Without affording XTO sufficient time to address his proposed motion, Glass filed the motion to amend just hours later on that same afternoon. In Glass's motion to amend, he argued he should be allowed to add yet another defendant in this case, Integrity Inspection Services, Inc. ("Integrity"). Dkt. 25. XTO opposed the motion to amend for a variety of reasons, including that the Court should not reward Glass' lack of diligence in investigating his claims by allowing him to keep XTO in this lawsuit, and citing the Court's long passed deadline for Glass to amend his complaint. Dkt. 27. The Court granted Glass' motion to amend, but noted that the Court has the power to sanction Glass for his discovery abuses and also to dismiss Glass' claims due to their frivolity. *See* Dkt. 39 at 6-7.

Nonetheless, Glass continued in his failure to conduct any discovery at all—he never sent written discovery requests to XTO and he never deposed any of XTO's employees; perhaps more importantly, Glass never sent written discovery requests to Criddle and/or Integrity, and he never

deposed Criddle or any of Integrity's employees despite taking the time to add them to this suit he is not litigating (and forcing XTO to utilize its own resources to oppose such further gamesmanship though it has consistently maintained it did not employee Criddle or Plaintiff).

During a telephone conversation between counsel for Glass and counsel for XTO on October 31, 2022, counsel for XTO informed counsel for Glass that XTO intended to move for dismissal of Glass' claims as a sanction for his discovery conduct. During this call, Glass' counsel shared personal details regarding a tough situation his family has been going through, which XTO does not elaborate on here out of respect for their privacy. XTO agreed that the Parties would jointly move for an extension of the remaining pretrial deadlines by 60 days, but this was conditioned on Glass' willingness to provide his outstanding discovery responses within the week. *See* Exhibit C.  (He did not.) Glass' counsel also specifically requested that Glass be allowed to potentially depose a corporate representative of XTO (he did not) and/or Tommie Criddle (he did not). Discovery closed on January 2, 2023. Dkt. 35.

As mentioned above, Counsel for XTO sent a second deficiency letter to Glass on January 4, 2023, warning Glass that XTO intended to move for sanctions under Rules 11, 37, 41. *See* Exhibit K. Glass' counsel responded by requesting a call on the morning of January 6, 2023, and XTO responded that it was available. However, Glass' counsel postponed the originally scheduled call and then was unavailable for the remainder of the day. Stated differently, XTO has made extensive efforts to communicate with Glass about his deficient discovery responses and to accommodate myriad requests for extension. But discovery has closed and XTO still remains, without any basis, a party to this lawsuit. Accordingly, XTO seeks the Court's intervention.

## II.     Standard of Review

Under Federal Rule of Civil Procedure 37(d)(1)(A)(ii), the Court may order sanctions if "a party, after being properly served with interrogatories ... or a request for inspection ... fails to serve its answers, objections, or written response." *Aguilar v. Mgmt. & Training Corp.*, No. CV 16-00050 WJ/GJF, 2016 WL 9503787, at *1 (D.N.M. Nov. 30, 2016). Under subsection (d)(3), which cross-references Rule 37(b)(2)(A)(i)-(vi), the sanctions may include dismissing the case in whole or in part, or rendering default judgment. *Id.* Similarly, Federal Rule of Civil Procedure 41(b) authorizes a district court to dismiss an action sua sponte for failure "to prosecute or to comply with [the Federal Rules of Civil Procedure] or a court order." *Barnes v. United States Dist. Court*, 815 Fed. App'x 295, 296 (10th Cir. 2020), reh'g denied (June 2, 2020) (quoting Fed. R. Civ. P. 41(b)).  This Rule provides the district court a tool to effectively manage its docket and avoid "unnecessary burdens on the tax-supported courts and opposing parties." *Ellis-Hall Consultants, LLC v. Hoffman*, No. 2:12-CV-771, 2018 WL 11411604, at *1 (D. Utah Aug. 31, 2018) (quoting *Schafer v. City of Defiance Police Dep't*, 529 F.3d 731, 736 (6th Cir. 2008)).

In *Ehrenhaus v. Reynolds*, 965 F.2d 916 (10th Cir. 1992), the Tenth Circuit Court of Appeals identified the factors to be considered when evaluating grounds for dismissal under Rule 37 or Rule 41(b). These include: (1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions. *Id.* at 921. Rather than a rigid test, these factors "represent criteria for the district court to consider prior to imposing dismissal as a sanction." *Id.* "Dismissal is warranted when the aggravating factors outweigh the judicial system's

strong predisposition to resolve cases on the merits." *Ecclesiastes 9-10-11-12, Inc. v. LMC Holding Co.*, 497 F.3d 1135, 1144 (10th Cir. 2007) (citation omitted).

### III.     Arguments and Authorities

**A.     Plaintiff's dilatory strategy has prejudiced and will continue to prejudice XTO.**

Plaintiff's protracted delay in prosecuting this case has prejudiced XTO simply because it remains a named defendant in this lawsuit. XTO played no role in Glass's employment or the termination of his employment. Glass represented to the Court and XTO that, over a year into this litigation, he needed to conduct discovery to determine who, in fact, was his employer. He has not done so or dismissed XTO as promised. As a result, XTO continues to unnecessarily expend time and resources on this matter, despite having maintained since its inception that XTO played no role in the purported unlawful actions. The prejudice is clear: XTO continues to be forced to spend resources when it was not responsible for any actions described by Glass, all the while Glass takes zero effort to conduct discovery regarding the parties whom may actually have answers regarding the underlying allegations.

**B.     Glass affirmatively stated he needed to conduct discovery to identify the proper parties in this case, but then failed to engage in any discovery.**

As detailed above, Glass stymied the judicial process in this case by failing to act to advance this case. He convinced the Court to postpone the settlement conference to allow him to engage in discovery, but, when given that opportunity, he simply failed to do so. At Glass's request, and in reliance on his representation he would dismiss XTO from this case, XTO provided a sworn statement that it never employed Criddle. Nonetheless, Glass reneged on his promise. Similarly, Glass requested an extension of all case deadlines so that he could conduct more discovery, but again failed to follow through.

### C. Glass should anticipate dismissal of this case due to his failure to prosecute and the Court's warning in its Order on Glass' Motion to Amend.

After filing this case, Glass has done little to nothing to prosecute it. He purposefully neglected responding to any of the discovery requests, despite receiving extensions, and he refused to provide a deposition date. He also failed to send any discovery requests himself. Doing nothing except asking for extensions is not properly prosecuting his case. Counsel for Glass no doubt appreciates the likely consequences of Plaintiff's failure to prosecute, including dismissal of this case, as XTO has now sent Glass two formal deficiency letters and a variety of other informal deficiency emails. The Court also previewed its authority to sanction discovery abuses and to dismiss frivolous claims in its Order on Glass Motion Amend. Dkt. 39 at 6-7.

### D. Lesser sanctions are not warranted.

District of New Mexico Local Rule 41.1 gives fair warning to parties they must diligently prosecute their claims or risk dismissal. Glass candidly admits his discovery responses are woefully overdue and that he should not be pursuing frivolous claims. And, as noted above, the Court sufficiently warned Glass of its authority to sanction discovery abuses and to dismiss frivolous claims in its Order on Glass Motion Amend. Dkt. 39 at 6-7. Yet Glass has barely engaged in discovery by only partially responding to XTO's discovery requests and never serving discovery on XTO, Criddle, or Integrity. Given that the discovery period has now closed, it is unclear how any sanction aside from dismissal would remedy the prejudice caused in the past to XTO and the prejudice XTO would face should it be required to expend further unnecessary resources to move for summary judgment on Glass' claims.

## IV. Conclusion

WHEREFORE, for each of the foregoing reasons, XTO respectfully asks the Court to dismiss this lawsuit with prejudice. Pursuant to Federal Rule of Civil Procedure 37, XTO further asks the Court to award its attorneys' fees and costs incurred in connection with this Motion, and grant such other relief as is just.

Respectfully submitted,

LITTLER MENDELSON, P.C.

*/s/ Kelli Fuqua*
R. Shawn Oller (NM State Bar No. 8787)
soller@littler.com
Camelback Esplanade
2425 East Camelback Road, Suite 900
Phoenix, AZ 85016
Telephone: 602.474.3600
Facsimile: 602.957.1801
Kelli Fuqua
kfuqua@littler.com
100 Congress Avenue, Suite 1400
Austin, TX  78701
512.982.7250 (telephone)
512.982.7248 (facsimile)

*Attorneys for Defendant XTO Energy Inc.*

I hereby certify that, on this 6th day of January, 2023, I filed the foregoing using CM/ECF, which caused service by electronic means on all counsel of record as follows:

Timothy L. White
VALDEZ AND WHITE LAW FIRM, LLC
124 Wellesley Dr. SE
Albuquerque, NM  87106
tim@valdezwhite.com


*/s/ Kelli Fuqua*
Kelli Fuqua