# EXHIBIT K



**Littler Mendelson, P.C.**
2425 East Camelback Road
Suite 900
Phoenix, AZ  85016-4242


Shawn Oller
512.982.7253 direct
602.474.3600 main
602.957.1801 facsimile
soller@littler.com

January 4, 2023

**VIA EMAIL TO TIM@VALDEZWHITE.COM**

Timothy L. White
VALDEZ AND WHITE LAW FIRM, LLC
124 Wellesley Dr. SE
Albuquerque, NM  87106

      Re:    *Travis Glass v. XTO Energy and Tommie Criddle* (Case No. 1:21-cv-00543 in the United States District Court for the District of New Mexico) – <u>Defendant XTO's Second Deficiency Letter and Notice of Intent to Move for Sanctions</u>

Dear Tim:

      As you are well aware, your client, Travis Glass, initially filed the above-referenced lawsuit in the Eleventh Judicial District Court of New Mexico[1] over twenty months ago, asserting claims against Defendants XTO and Tommie Criddle for tortious interference with an alleged employment contract and retaliatory discharge. Since that time, Glass has been lackadaisical, at best, or dilatory, at worst, in litigating the lawsuit he initiated. His discovery responses are wholly deficient and he has failed to conduct any discovery himself, despite the fact that his claims against XTO are utterly frivolous and you have claimed a need to conduct further discovery at least twice.

      XTO now requests that Glass provide supplemental discovery responses to his deficient prior responses, and XTO notifies Glass that XTO intends to move for sanctions against Glass for his litigation conduct and the frivolity of his claims, up to and including dismissal. XTO intends to file such a motion by close of business on January 6, 2023, given the deadline to do so expires that day.

**I.    Glass has wholly failed to prosecute the lawsuit he initiated, which is sanctionable.**

      On April 16, 2022, XTO served its initial discovery requests on Glass. *See* Dkt. 20. Glass failed to respond timely to XTO's discovery requests – thus having waived any objections to the requests and admitted XTO's requests for admission. On May 21, 2022, you acknowledged you missed the deadline to respond to the discovery requests, and requested an extension until June 3, 2022, to provide Glass' responses. XTO granted the extension. *See* <u>Exhibit A</u>.

      But June 3 came and went with no response from Glass, and no response still three months after that. Accordingly, XTO sent a discovery deficiency letter to you on September 12, 2022, warning Glass that

---

[1] XTO removed the case to federal court on June 11, 2021.

Tim White
January 4, 2023
Page 2

it intended to move to compel responses and a deposition date for Glass. *See* Exhibit B. Nonetheless, Glass still did not respond to XTO's discovery requests, so XTO prepared to move for dismissal of Glass' claims due to his utter lack of prosecution of such claims.

Following a telephone conversation with you on October 31, 2022, wherein you detailed certain personal circumstances that had been affecting your ability to perform your work, we sympathetically agreed that we would wait to file the motion to compel if you provided discovery responses within the week. *See* Exhibit C. Again, though, you failed to provide the promised responses. So again, on November 8, 2022, we threatened to file the drafted motion to compel. *Id.* You asked if we would wait one more day. We did. *See* Exhibit D.

Finally, about seven months after XTO served its initial discovery requests on Glass, on November 9, 2022, you provided "responses" to XTO's request, though the responses were largely deficient. *See* Exhibit E. For example, Glass answered "I don't remember" to at least 6 interrogatory subparts, including interrogatories simply about his pay at other jobs or other verifiable facts, and "None in my possession" to at least 20 requests for production, including requests for documents that would plainly be retrievable by Glass, such as his paychecks, paystubs, tax forms, or any documents about his allegations. Indeed, Glass testified at his deposition that he likely has access to a wide variety of evidence about this case, he simply is computer illiterate and would need to ask his wife to help him. It is wholly unclear why he did not ask his wife to help him in the first place if that is the case. **XTO demands that Glass access his bank accounts and/or email account to provide, by January 6, 2023, at 10 a.m. Mountain, all information that demonstrates from whom Glass has received income, the total amount of that income, and the dates such income was received beginning from the time he was employed by TRC until present day.**

Despite the wholesale non-responses received as to XTO's discovery requests after seven months waiting on them, we agreed to press forward by scheduling Glass' deposition, as we could afford no further delays due to Glass dilatory litigation strategy, having already received two prior extensions to ostensibly allow Glass to conduct discovery (note: he still has served zero discovery requests and zero deposition notices). And, on December 23, 2022, were finally able to depose Glass.

At his deposition, Glass reiterated the utter lack of evidence he has to support any of his claims against XTO and, in fact, put the nail in the proverbial coffin regarding any of his claims against XTO. *See* Exhibit F. The following are some of the most apposite examples:

> **Q. So when you're saying he must be the boss for XTO, that's you speculating based on Tommie's role at the yard; is that right?**
> A. I guess if you want to put it that way, I'll agree to that.

[40:16-20]

***

Tim White
January 4, 2023
Page 3

 

**Q. Please let me finish my question. Have you ever seen a contract between Tommie Criddle and XTO?**
    A. No, ma'am.
**Q. And you've never personally seen any sort of paperwork between Tommie Criddle and XTO, correct?**
    A. No, ma'am.

[41:16-21]
***

**Q. And do you know if Tommie Criddle was an employee of Integrity Inspection Solutions?**
    A. I do not know who Tommie worked for on third-party.

[42:14-17]
***

**Q. And when you applied -- or when you began working for TRC, did you disclose that you had diabetes?**
    A. No, ma'am.
**Q. Did you ask for permission or seek an accommodation to bring Little Dog with you to work for TRC?**
    A. No, ma'am.
**Q. So you just brought her to work with you and that was that?**
    A. Yes, ma'am.

[48:22-49:5]
***

**Q. Okay. And then did you ever tell anyone at XTO that you had diabetes?**
    A. No.
**Q. Did you tell anyone at XTO that you had a disability?**
    A. No. Or I say no, not at this point.
**Q. Okay. What do you mean? You mean that you did at some time?**
    A. Yes, I did, later on.
**Q. When did you tell -- or who did you tell at XTO that you had diabetes or a disability?**
    A. Tommie Criddle.
**Q. Is there anyone else that you believe worked for XTO that you told you had diabetes or a disability?**
    A. I believe I told the engineer or one of her people. I don't remember who it was.
**Q. So did you tell the engineer or did you tell one of her people? I'm confused.**

>    A. I don't remember. I spoke to one of them.
> **Q. Okay. How do you remember speaking to one of them if you don't remember who you were you speaking to?**
>    A. Because I called one of them and told them that I had just been run off over my service dog and they didn't want to hear it.

[49:13-50:11]

***

> **Q. And is it your understanding that Tommie Criddle made the decision to have you taken off-site?**
>    A. Tommie Criddle is who told us it's -- in my opinion, it was probably somebody higher up.
> **Q. So you have no personal knowledge of any sort of conversations like that, correct?**
>    A. No, ma'am.

[57:3-9]

***

> **Q. And when you say that you've dealt with him through Tommie Criddle, what do you mean by that?**
>    A. I'm assuming Tommie Criddle works for Integrity because you're asking questions about it. I don't know who Tommie worked for.

[58:9-13]

***

> **Q. And you're not alleging that you were an employee of XTO, correct?**
>    A. I was working for XTO by a third-party.
> **Q. Meaning you were employed by TRC, and TRC subcontracted with XTO?**
>    A. Yes, ma'am.

[62:18-23]

Summed up, Glass testified: (1) he does not know who employed Tommie Criddle—he simply speculates it was XTO; (2) Glass himself did not work for XTO; (3) Glass never told anyone at XTO he had diabetes and/or a disability until after such time as his employment was terminated by TRC (even then, he does not know who he told); and (4) Glass has no idea who made the decision to terminate him or why—he simply speculates it was because of his disability. Based on Glass' deposition testimony in these respects, failing to dismiss XTO from this suit immediately would be sanctionable, as Glass' claims against

Tim White
January 4, 2023
Page 5

XTO are plainly frivolous.[2] Notably, the Court's order on Glass' Motion to Amend suggests the Court would be open to entertaining such a motion at this time. *See* Dkt. 39 at 6-7.

II.     **You requested to move the scheduling conference and amend the scheduling order under the auspices of needing to conduct more discovery, but you failed to conduct any discovery at all.**

Meanwhile, in the midst of XTO's myriad attempts to secure discovery responses from Glass, you requested to move the first scheduling conference, which the Court had previously scheduled for June 22, 2022, under the auspices of needing to conduct more discovery. Specifically, XTO yet again informed Glass in June 2022 that XTO never employed Criddle, and, accordingly, XTO played no part in Glass' employment or his alleged termination. In response to this fact, of which Glass had been made keenly aware for over a year, Glass proposed postponing the settlement conference to "do some discovery or get disclosures" to answer the question of who, in fact, employed Criddle. *See* Exhibit G.  XTO stated it was prepared to go forward with the conference, but also noted it would comply with the preference of the Court with regard to rescheduling, which the Court did following a brief status conference on June 9, 2022. *See* Doc. 22.

Following the postponement of the Court's scheduled settlement conference, you sent an email as follows:

> Charlotte, not asking you to prove a negative that Criddle didn't work for you, but in light of my client, his coworker and Criddle's linkedin page, can you send me anything that shows he did not work for you and/or worked for another company that had him on the jobsite? I need to nail this down asap in light of the applicable court deadlines and applicable SOL.
>
> Thank you
>
> **Tim White**
>
> **Everybody counts or nobody counts**
>
> Timothy L. White - Attorney
> Valdez & White Law Firm, LLC

*See* Exhibit H.[3]  Counsel for XTO responded as follows:

---

[2] Glass appears to simply be seeking a big payout, testifying at his deposition that he would walk away from this suit for $1 million. Litigation in pursuit of monetary awards, in fact, appears to be a burgeoning hobby for Glass, whose own experience with the Courts also extends even to the criminal system due to a physical altercation with his own child—a fact a jury in New Mexico would likely not look favorably upon.

[3] A simple LinkedIn search demonstrates that Tommie Criddle does not list any employment with XTO on his LinkedIn Page, including during the relevant time period:

Tim White
January 4, 2023
Page 6

> Good Afternoon Tim:
>
> We are willing to provide a declaration from XTO's HR department that states XTO never employed Criddle. Will that suffice? That may be the best we can do because, in fact, XTO never employed him. Also, XTO reached out to Criddle last week and asked him to remove the fabricated statement on his Linked In page that he was/is an employee of XTO, and he removed it immediately. Please advise.
>
> Best regards,
>
> Charlotte
>
> **Charlotte Lamont**
> Shareholder
> 505.944.9682 direct, 505.379.6057 mobile, 505.213.0415 fax
> CLamont@littler.com

*Id.* You responded:

> Charlotte
> Can XTO identify who his employer was then? Its their jobsite, and based on what my client and other TRC employees have said, if Cribble wasn't there as an XTO employee he has to be there for a subcontractor, he clearly acted as if he had authority to tell Travis to leave if he insisted on having his service dog, so he was acting as an agent whether he was an employee or not. But I not going to waste time and money suing XTO if they don't belong in this lawsuit, nor violate our ethical rules in that context. So if you can get me a sworn statement setting out the facts as XTO alleges, that should answer the question.
>
> **Everybody counts or nobody counts**
>
> Timothy L. White - Attorney
> Valdez & White Law Firm, LLC



littler.com

*Id.*

Relying on your stipulation you would not "waste time and money suing XTO" if it is not a proper defendant in order to not "violate our ethical rules in that context," XTO provided a sworn statement from its Human Resources Manager Rich Hagen setting out the facts precisely as Glass requested. *See* Exhibit I. Specifically, Mr. Hagen testified:

- XTO never employed a person named Tommie Criddle to work at a site in New Mexico, or anywhere else.
- Based on information and records available to XTO, in 2019 Tommie Criddle was employed by Integrity Inspection Services, an entity that provided pipeline inspection services to XTO.
- Tommie Criddle was never an agent of XTO and never acted as an XTO manager or supervisor.

*Id*.

But XTO did not receive the anticipated agreement to dismiss XTO from this suit. Instead, without comment on the Hagen declaration, you sent a proposed motion to further amend the complaint, asking XTO's position on the same. *See* Exhibit J. Without affording XTO sufficient time to address his proposed motion, Glass filed the motion to amend just hours later on that same afternoon. In Glass's motion to amend, he argued he should be allowed to add yet another defendant in this case, Integrity Inspection Services, Inc. ("Integrity"). Dkt. 25. XTO opposed the motion to amend for a variety of reasons, including that the Court should not reward Glass' lack of diligence in investigating his claims by allowing him to keep XTO in this lawsuit, and citing the Court's long passed deadline for Glass to amend his complaint. Dkt. 27. The Court granted Glass' motion to amend, but noted that the Court has the power to sanction Glass for his discovery abuses and also to dismiss Glass' claims due to their frivolity. *See* Dkt. 39 at 6-7.

Nonetheless, you continued in your failure to conduct any discovery at all—you never sent written discovery requests to XTO and you never deposed any of XTO's employees; perhaps more importantly, you never sent written discovery requests to Criddle and/or Integrity, and you never deposed Criddle or any of Integrity's employees despite taking the time to add them to this suit you are not litigating (and forcing XTO to utilize its own resources to oppose such further gamesmanship).

During a telephone conversation between you, Charlotte Lamont, and Kelli Fuqua on October 31, 2022, counsel for XTO informed you that XTO intended to move for dismissal of Glass' claims as a sanction for his discovery conduct. During this call, you shared personal details regarding a tough situation your family has been going through, which we will not elaborate on here out of respect for your privacy. We spoke with our client and agreed that we would jointly move for an extension of the remaining pretrial deadlines by 60 days, but this was conditioned on your willingness to provide Glass' discovery responses within the week. *See* Exhibit C. (You did not.) You also specifically requested that you be allowed to potentially depose a corporate representative of XTO (you did not) and/or Tommie Criddle (you did not). Discovery closed on January 2, 2023. Dkt. 35.

### III. XTO now intends to move for dismissal of Glass' claims as a sanction for his failure to prosecute this action and for the frivolity of Glass' claims.

Under Federal Rule of Civil Procedure 37(d)(1)(A)(ii), the Court may order sanctions if "a party, after being properly served with interrogatories ... or a request for inspection ... fails to serve its answers, objections, or written response." *Aguilar v. Mgmt. & Training Corp.*, No. CV 16-00050 WJ/GJF, 2016 WL 9503787, at *1 (D.N.M. Nov. 30, 2016). Under subsection (d)(3), which cross-references Rule 37(b)(2)(A)(i)-(vi), the sanctions may include dismissing the case in whole or in part, or rendering default judgment. *Id.* Similarly, Federal Rule of Civil Procedure 41(b) authorizes a district court to dismiss an action sua sponte for failure "to prosecute or to comply with [the Federal Rules of Civil Procedure] or a court order." *Barnes v. United States Dist. Court*, 815 Fed. App'x 295, 296 (10th Cir. 2020), reh'g denied (June 2, 2020) (quoting Fed. R. Civ. P. 41(b)). This Rule provides the district court a tool to effectively manage its docket and avoid "unnecessary burdens on the tax-supported courts and opposing parties." *Ellis-Hall Consultants, LLC v. Hoffman*, No. 2:12-CV-771, 2018 WL 11411604, at *1 (D. Utah Aug. 31, 2018) (quoting *Schafer v. City of Defiance Police Dep't*, 529 F.3d 731, 736 (6th Cir. 2008)).

In *Ehrenhaus v. Reynolds*, 965 F.2d 916 (10th Cir. 1992), the Tenth Circuit Court of Appeals identified the factors to be considered when evaluating grounds for dismissal under Rule 37 or Rule 41(b). These include: (1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions. *Ehrenhaus*, 965 F.2d at 921. Each of these factors weighs in favor of dismissal here:

1. Glass' protracted delay in prosecuting this case has prejudiced XTO simply because it remains a named defendant in this lawsuit. XTO played no role in Glass's employment or the termination of his employment. Glass represented to the Court and XTO that, over a year into this litigation, he needed to conduct discovery to determine who, in fact, was his employer. He has not done so or dismissed XTO as promised. As a result, XTO continues to unnecessarily expend time and resources on this matter.
2. As detailed above, Glass has stymied the judicial process in this case by failing to act to advance this case. He convinced the Court to postpone the settlement conference to allow him to engage in discovery, but, when given that opportunity, he simply failed to do so.
3. At Glass's request, and in reliance on his representation he would dismiss XTO from this case, XTO provided a sworn statement that it never employed Criddle. Nonetheless, Glass reneged on his promise.
4. While the Court has not explicitly notified Glass it may dismiss this case for failure to prosecute, that result should come as no surprise to him. After filing this case, Glass has done little to nothing to prosecute it. He purposefully neglected responding to any of the discovery requests, despite receiving extensions, and he refused to provide a deposition date. He also failed to send any discovery requests himself. Doing nothing except asking for extensions is not properly prosecuting his case. Counsel for Glass no doubt

Tim White
January 4, 2023
Page 9

      appreciates the likely consequences of Glass' failure to prosecute, including dismissal of this case.

5. District of New Mexico Local Rule 41.1 gives fair warning to parties they must diligently prosecute their claims or risk dismissal. Glass candidly admits his discovery responses are woefully overdue. Glass told the Court he needed discovery to determine who was his employer. This assertion defies credulity – any one of Glass's paystubs would have revealed the identity of his employer. Yet Glass has not engaged in discovery by responding to XTO's requests, providing a date for his deposition, or serving discovery on XTO or Criddle.

The standard of review for Rule 11 sanctions requests is more straightforward: in deciding whether to impose Rule 11 sanctions, a district court must apply an objective standard; it must determine whether a reasonable and competent attorney would believe in the merit of an argument. *Dodd Ins. Services, Inc. v. Royal Ins. Co. of Am.*, 935 F.2d 1152, 1155 (10th Cir. 1991) (citing *White v. General Motors Corp.,* 908 F.2d 675, 680 (10th Cir. 1990); *Adamson v. Bowen,* 855 F.2d 668, 673 (10th Cir. 1988)). Here, in light of the foregoing case history extensively described above, it is clear that a reasonable and competent attorney would not believe in the merit of any claims against XTO. It is unclear what your basis is for keeping XTO in this suit any longer.

**IV.**      **Conclusion**

Lest you intend to nonsuit Glass' frivolous claims against XTO, please provide Glass' supplemental responses to XTO's initial discovery requests by 10 a.m. Mountain on January 6, 2023. Please also provide your position on dismissing XTO from this lawsuit at the same time. If we do not receive Glass' supplemental discovery responses and position on dismissing XTO by this time, XTO will file a motion for sanctions with the Court on January 6, 2023.

Thank you for your attention to this matter.

                                        Thank you,

                                        */s/ Shawn Oller*

Enclosures

cc: Kelli Fuqua, firm

# EXHIBITS TO EXHIBIT K (SECOND DEFICIENCY LETTER) EXCLUDED AS DUPLICATIVE OF EXHIBITS A-J ATTACHED HERE