## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| TRAVIS GLASS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | Civil Action No.:  1:21-cv-00543-JCH-JMR |
| | § | |
| v. | § | |
| | § | |
| XTO ENERGY, INC., and TOMMIE | § | |
| CRIDDLE, individually and as agent or | § | |
| employee of XTO ENERGY, INC. or as | § | |
| agent or employee of INTEGRITY | § | |
| INSPECTION SERVICES, LLC and | § | |
| INTEGRITY INSPECTION SERVICES, | § | |
| | § | |
| Defendants. | § | |
| | § | |

### DEFENDANT  INTEGRITY INSPECTION SERVICES, LLC'S
### MOTION TO DISMISS

Pursuant to Federal Rule of Civil Procedure 12(b)(6) and 12(d), Defendant Integrity

Inspection Services, LLC ("Integrity") respectfully moves to dismiss Plaintiff Travis Glass's

claims against Integrity. Integrity additionally requests that, following the completion of briefing

on the motion, that it be granted a hearing on its motion. The motion is based upon the arguments

and points and authorities outlined below, the accompanying declarations of Annette A. Idalski[1]

and Mark Scruggs[2], the Second Amended Complaint for Damages and all documents referenced

therein.[3]

---

[1] The Declaration of Annette A. Idalski in Support of Motion to Dismiss will be referenced herein as "Idalski Decl."

[2] The Declaration of Mark Scruggs in Support of Integrity's Motion to Dismiss will be referenced herein as "Scruggs Decl."

[3] Defendant Integrity also relies upon Plaintiff's sworn testimony in his deposition in this case as his admissions further support dismissal of Integrity from this action.  To the extent the Court is required to turn Defendant Integrity's Motion to Dismiss into a Motion for Summary

## I.    **INTRODUCTION**

Nearly two years after filing this litigation and four years after his discharge, Plaintiff, an oilfield inspector employed by TRC, has inexplicably dragged Integrity Inspection Services, LLC ("Integrity") into this lawsuit alleging two claims, including retaliatory discharge and tortious interference.  Both claims are frivolous as to Integrity because they are devoid of any plausible allegations as pled and do not state legal claims.  These defects are incurable because the admissions in Plaintiff's Second Amended Complaint confirm that both claims have no basis in fact or law. Put simply, Plaintiff admits that his employer was TRC [Doc. 40, at ¶ 7], that he had a single conversation with Tommie Criddle, who did not work for TRC, about the presence of his dog on the XTO work site [Doc. 40, at ¶ 9], that immediately after his conversation with Criddle, he went to his TRC supervisor and was instructed by the TRC supervisor to remain at work "since Criddle had not 'thrown him off the job'" [Doc. 40, at ¶ 14], and that the next day TRC told Plaintiff that "XTO is making us take you off the job" due to a safety violation [Doc. 40, at ¶ 15]. Thus, even according to Plaintiff's own version of events as stated in his Complaint, TRC was his employer, his employer told him to remain at work after the conversation with Criddle, and his employer terminated him because XTO was "making" TRC do that. Plaintiff was never told, and has not offered any factual allegation indicating otherwise, that Integrity, or even Criddle, had any authority to terminate him, much less compel TRC to do so.

Both of Plaintiff's claims fail as a matter of law. First, Plaintiff's claim for retaliatory discharge is entirely baseless for at least two reasons.  As an initial matter, this claim cannot be brought against a non-employer. *See, e.g., Bourgeous v. Horizon Healthcare Corp.*, 1994-

---

Judgment, it may do so. *See Champaign v. CenturyLink Communications*, Case No. 22-CV-232 KG/SCY, 2023 WL 2308246, at * 3 (D. N.M. Mar. 1, 2023) (noting that the court's consideration of "attachments and evidence converts this issue from a motion to dismiss to a motion for summary judgment"); *Duprey v. Twelfth Judicial Dist. Court, State of New Mexico*, 760 F. Supp. 2d 1180, 1193 (D. N.M. 2009).

NMSC-038, ¶ 11, 117 N.M. 434, 872 P.2d 852 (stating with respect to the New Mexico common law tort of retaliatory discharge "If [plaintiff] was employed by Horizon, only Horizon could discharge [plaintiff]");  *Stinson v. Berry*, 1997-NMCA-076, ¶ 198,123 N.M. 482, 943 P.2d 129; *Coyne v. Los Alamos National Security, LLC*, Case No. 15-cv-54 SCY/KK, 2015 WL 13662768, at *2 (D. N.M. Apr. 20, 2015). It is undisputed, based on the allegations in his Second Amended Complaint and his sworn deposition testimony,  that Integrity is not Plaintiff's employer. ECF No. 40, at ¶ 7; (Idalski Decl., Exh. A [Glass Deposition], at 30:21-25; 33:2-4). In fact, Integrity has no relationship with Plaintiff, let alone an employment relationship. To be sure, Plaintiff admitted at his deposition that he was hired by and employed by TRC and **not** Integrity. (Idalski Decl., Exh. A [Glass Deposition], at 30:21-25; 33:2-4).

An additional basis for dismissal of the retaliatory discharge claim is Plaintiff's admission that he did not reveal his alleged disability to his only admitted employer, TRC, much less engage in the interactive process in seeking the accommodation of bringing his dog to work. (Idalski Decl., Exh. A [Glass Deposition], at 48:22-49:5). Given his failure to plead these facts, and his inability to cure his Complaint based on his subsequent sworn admissions, Plaintiff's retaliatory discharge claim fails as a matter of law and must be dismissed. *See Trujillo v. Northern Rio Arriba Elec. Coop., Inc.*, 2002-NMSC-004, 131 N.M. 607, 41 P.3d 333.

Plaintiff's second claim for tortious interference with his contract/employment relationship with TRC is equally baseless. Plaintiff testified under oath that Criddle was an employee of XTO, and that Plaintiff had no knowledge beyond that of Criddle's employer, the scope of Criddle's authority, or any ties that Criddle had to Integrity or TRC. (Idalski Decl., Exh. A [Glass Deposition], at 39:15-42:17). Under such circumstances, Plaintiff has not alleged facts, nor can he, given his sworn testimony to the contrary, showing that Integrity, via Criddle or

otherwise, had any knowledge of the employment relationship or contract between Plaintiff and TRC, that Integrity played an active and substantial part in Plaintiff's alleged loss of contractual benefits, or that Integrity was without justification or privilege. Hence, his tortious interference with contract claim must fail with respect to Integrity.

II.   **BACKGROUND**

A.   **Procedural History**

On April 27, 2021, nearly two years after he was terminated on June 27, 2019, Plaintiff sued XTO Energy, Inc. (hereinafter "XTO") and Tommie Criddle in New Mexico state court. [Doc. 1-1, at ¶¶ 3-4]. Plaintiff alleged tortious interference with contract and retaliatory discharge claims against both XTO and Criddle. [*Id.*, at ¶¶ 18-32]. On June 11, 2021, XTO removed the state court action to this Court. [Doc. 1]. On September 28, 2021, five months after filing his lawsuit, Plaintiff filed a motion to amend his complaint to correct XTO's name. [Doc. 9]. On September 29, 2021, this Court granted that motion and permitted Plaintiff to file an amended complaint. [Doc. 10].

On December 29, 2021, the Court set a Rule 16 Initial Scheduling Conference for April 11, 2022 and ordered the parties to file a Joint Status Report and Provisional Discovery Plan by April 4, 2022. [Doc. 13]. The Court held the Rule 16 scheduling conference on April 11, 2022 and issued an Order confirming that Plaintiff had until April 1, 2022 to amend his pleadings or add parties. [Doc. 18; Doc. 39, at 2]. The Scheduling Order also established a discovery deadline of August 31, 2022. [Doc. 18]. The discovery deadline was subsequently extended until January 2, 2023. [Doc. 35].

On June 23, 2022, more than two months after the deadline to amend his pleadings or add parties, Plaintiff filed a Second Motion to Amend/Correct Complaint. [Doc. 25]. As this Court noted, in the proposed amended complaint, "[r]ather than drop the allegations against XTO, Mr.

Glass alleges harms by both XTO and [Integrity]." [Doc. 39, at 3]. XTO responded in part with a declaration from its human resources department attesting to what it had maintained throughout the litigation, that XTO never employed Criddle. [Doc. 27-3]. XTO additionally alleged in this declaration that Integrity had employed Criddle. [Doc. 27-3]. XTO objected to the amendment, arguing that Plaintiff had misrepresented the circumstances leading up to his Second Motion to Amend, that amendment was futile, and that Plaintiff  failed to conduct any discovery himself. [Doc. 27].

As recently as his December 23, 2022 deposition, **Plaintiff repeatedly maintained that Criddle worked for XTO**. (Idalski Decl, Exh. A [Glass Deposition], at 39:15-41:10). **He did so even while seeking to belatedly amend his complaint to add Integrity as a defendant**. [Doc. 25]. On December 6, 2022, this Court's granted Plaintiff's Second Motion to Amend Complaint. [Doc. 39]. In its Order, the Court noted that "XTO has not proven or even contended that the actual amendments—that is, the claims against [Integrity]—are futile." [Doc. 39, at 7]. The Court thus denied the futility argument, but expressly stated that the denial of the futility argument was "without prejudice." (*Id*.) Thus, there is no bar to Integrity raising such futility arguments in this Motion, now that it has been added to the case.

Plaintiff filed his Second Amended Complaint against Criddle, XTO, and Integrity on December 7, 2022. [Doc. 40]. On January 11, 2023, XTO filed a Motion to Dismiss XTO for Discovery Abuses and Failure to Prosecute. [Doc. 44]. Before XTO's Motion to Dismiss was fully briefed, XTO and Plaintiff filed a Joint Notice of Settlement between them. [Doc. 47]. On March 23, 2022, XTO filed a Stipulation for Dismissal of XTO with Prejudice. [Doc. 56].

5

To this date, and although Criddle has been named in this action as a defendant from its inception, Plaintiff has failed to serve Criddle. As a result, the Court has issued an Order to Show Cause why Criddle should not be dismissed from this action as well. [Doc. 59].

Integrity files this Motion to Dismiss because Plaintiff's claims as alleged in his Second Amended Complaint do not state viable claims and, additionally cannot survive as a matter of law based on his sworn deposition testimony.

**B.**     **Facts**

1.     ***Plaintiff admits he was only employed by TRC and not Integrity.***

In his Second Amended Complaint, Plaintiff admits that he "was employed by TRC Construction (hereinafter "TRC"). [Doc. 40, at ¶ 7]. Plaintiff further admits that, as part of his employment with TRC, he worked "on a job on which TRC was a subcontractor for defendant XTO prior to June 27, 2019." *Id.* He states that there was an "employment contract between TRC and plaintiff." [Doc. 40, at ¶ 19].

While he makes a cursory assertion in his Second Amended Complaint that Integrity might be a joint employer vicariously liable for Criddle [Doc. 40, at ¶ 30], he fails to offer a single allegation to support the elements of joint employment. He does not allege that he was hired by Integrity.  He does not allege that Integrity told him he was fired.  He does not allege that Integrity paid him.  He does not allege that Integrity kept any records of his work. And he does not allege that he was supervised by Integrity.  To the contrary, he alleges that he took instruction regarding when to stay on or leave the job from a TRC supervisor.  [Doc. 40, at ¶ 14]. In fact, Plaintiff testified that he had never dealt with Integrity until his conversation with Criddle, and he did not know at that time or, even at his deposition in December 2022 whether or not Criddle worked for Integrity. (Idalski Decl., Exh. A.[Glass Deposition], at 58:5-13). Accordingly, he fails to allege a plausible claim of joint employment by Integrity.  And it is too

late to add these allegations because he testified to the contrary in his deposition.  As recently as December 2022, Plaintiff specifically testified that he is not alleging that he was an employee of Integrity:

> Q.    You are not alleging that you were an employee of Integrity, correct?
>
> **A.    No, ma'am.**
>
> Q.    And you're not alleging that you were an employee of XTO, correct?
>
> **A.    I was working for XTO by a third-party.**
>
> Q.    Meaning you were employed by TRC, and TRC subcontracted with XTO?
>
> **A.    Yes, Ma'am.**

(Idalski Decl., Exh. A.[Glass Deposition], at 62:15-23). Plaintiff also testified that he was not working in a yard managed or owned by Integrity, and the pipeline project was not owned or operated by Integrity.

> Q.    What type yard were you operating at?
>
> **A.    It was XTO's pipe yard.**

(Idalski Decl., Exh. A [Glass Deposition], at 31:24-25).  Plaintiff's position that he is not alleging that he was an employee of Integrity is unremarkable, given that Integrity does not control who XTO brings to the site or who TRC hires. Scruggs Decl., at ¶ 6. Indeed, Integrity has no business relationship with TRC. *Id.*

## 2. *Plaintiff failed to notify his employer (TRC) of his disability*

Plaintiff alleges that he suffers from diabetes and has a service animal to alert him of an "impending medical problem coming due to his diabetes." [Doc. 40, at ¶ 8]. Plaintiff testified at his December 2022 deposition that he did not notify TRC, his employer, of his disability and *never* sought an accommodation with respect to that disability, stating as follows:

> Q.    And when you applied --- or when you began working for TRC, did you disclose that you had diabetes?
>
> **A.    No, ma'am.**

> Q.     Did you ask for permission or seek an accommodation to
>        bring Little Dog with you to work for TRC?
> **A.     No, ma'am.**
> Q.     So you just brought her to work with you and that was that?
> **A.     Yes, ma'am.**

(Idalski Decl., Exh. A [Glass Deposition], at 48:22-49:5).

### 3.     *Plaintiff's Discharge from TRC*

Plaintiff alleges that, on or about June 26, 2019, he was told by defendant Criddle that

[Plaintiff] could not have his service dog at work. [Doc. 40, at ¶ 9]. Plaintiff alleges that Criddle

told him "to leave the job." [Doc. 40, at ¶¶ 11-12]. Despite Criddle's alleged statement, Plaintiff

admits that he did not leave the job because his TRC supervisor told him to keep working. [Doc.

40, at ¶ 14].

According to Plaintiff, the next day, his TRC supervisor told him that "XTO is making us

take you off the job" due to a safety violation.[4] [Doc. 40, at ¶ 15]. Plaintiff does not allege that he

was told that he was being asked to leave the site due to any action by Criddle or Integrity.


## III.     ARGUMENT

### A.     STANDARD

A court may dismiss a complaint in whole or in part for failing to state a claim upon

which relief is available. Fed. R. Civ. Proc. 12(b)(6). To survive a motion to dismiss, a complaint

must state a claim for relief that plausibly, not merely possibly, entitles the plaintiff to relief

under the law. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). In considering a

---

[4] In his deposition, Plaintiff conceded that he "dropped one piece of pipe" while on the
XTO pipe yard. *See* Idalski Decl, Exh. A [Glass Deposition], at 33: 12. He also admitted that
dropping the pipe was a safety violation, testifying as follows:
Q:     Why is that problematic or why is that a safety violation , if it is?
**A:     Obviously, it's heavy pipe. You skin the coating up. There's just nothing good about
dropping a piece of pipe**.
(Idalski Decl, Exh. A [Glass Deposition], at 33:18-21).

motion to dismiss, the court need not accept legal conclusions contained in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A viable complaint "must provide more than mere 'labels and conclusions' or ' a formulaic recitation of the elements of a cause of action.'" *Mackley v. TW Telecom Holdings, Inc.*, 296 F.R.D. 655, 663 (D. Kan. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Generally, when evaluating a motion to dismiss, if the parties present matters outside the pleadings for the court's consideration, the motion may be converted to one for summary judgment. Fed. R. Civ. Proc. 12(d); *Champaign v. CenturyLink Communications*, Case No. 22-CV-232 KG/SCY, 2023 WL 2308246, at * 3 (D. N.M. Mar. 1, 2023) (noting that the court's consideration of "attachments and evidence converts this issue from a motion to dismiss to a motion for summary judgment"); *Duprey v. Twelfth Judicial Dist. Court, State of New Mexico*, 760 F. Supp. 2d 1180, 1193 (D. N.M. 2009). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Matsushita Elec. Indus. Co. v. Zenith*, 475 U.S. 574, 587-88 (1986). To avoid summary judgment, the nonmoving party may not rest upon the mere allegations in the pleadings but must show, at minimum, some evidence sufficient to support an inference of the existence of each essential element of the case. *Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1016-17 (10th Cir. 2001) (citing *Hulsey v. K-Mart, Inc.*, 43 F.3d 555, 557 (10th Cir. 1994)).

**B.** **Plaintiff Cannot Establish a Claim for Common Law Retaliatory Discharge.**

    **1.** ***Plaintiff's Retaliatory Discharge Claim Fails against Integrity because Plaintiff Admitted that TRC, and not Integrity, was His Employer.***

This claim is easily dismissed for the sole reason that Integrity cannot be liable for retaliatory discharge because Plaintiff swore under oath in his deposition that Integrity was not his employer.  Notwithstanding this admission, Plaintiff did not even allege the elements of joint employment in his Second Amended Complaint.  Given his sworn testimony, any amendment to the Complaint would be futile.

Without an employer-employee relationship between Plaintiff and Integrity, his retaliatory discharge claim must fail.  "[T]he tort of retaliatory discharge is based on an employer-employee relationship." *Stinson*, 1997-NMCA-076, ¶ 19. Only the actual employer can be liable under this "narrow exception" to the at-will rule. *See, e.g. Bourgeous*, 1994-NMSC-038, ¶ 11 (stating with respect to the New Mexico common law tort of retaliatory discharge "If [plaintiff] was employed by Horizon, only Horizon could discharge [plaintiff]");  *Stinson*, *supra*, at ¶ 19 (finding that "*Bourgeous* essentially held that only the corporation, as employer, could be liable for a wrongful termination"); *Coyne v. Los Alamos National Security, LLC*, Case No. 15-cv-54 SCY/KK, 2015 WL 13662768, at *2 (D.N.M. Apr. 20, 2015) ("The New Mexico Supreme Court has severely limited a plaintiff's right to bring a retaliatory discharge claim against an individual… who is not that plaintiff's employer."); *Champaign v. CenturyLink Communications*, Case No. 22-CV-232 KG/SCY, 2023 WL 2308246, at * 2 (D. N.M. Mar. 1, 2023) ("[R]etaliatory discharge is premised in the improper <u>firing</u> of an employee by an <u>employer</u>.") (emphasis in original); *Liberty Mutual Fire Ins. Co. v. Sigmont*, No. CIV 03-1037 RB/ACT, 2004 WL 7337742, at *3 (D.N.M. May 19, 2004) (noting that "individual employees could not be held liable for retaliatory discharge because only the employer could discharge the

plaintiff"); *Clifton v. Holmes & Narver, Inc.*, No. CIV 00-372 MV/DJS, 2000 WL 36739954, at

* 5 (D. N. M. Apr. 21, 2000) (noting that, in discussing the tort of retaliatory discharge, an

"employer's motive is a key element of retaliatory discharges").

Plaintiff swore under oath at his deposition that he was hired by TRC and that TRC was

his employer:

> Q.     So it's my understanding that you were employed by a
>        company called TRC; is that correct?
> **A.     Yes, ma'am.**
> Q.     And you said Terry Carter hired you. What was Terry
>        Carter's role?
> **A.     he is the owner of TRC.**

(Idalski Decl., Exh. A [Glass Deposition], at 30:21-25; 33:2-4).

Plaintiff specifically testified that he was **<u>not alleging that he was an employee of</u>**

**<u>Integrity</u>**:

> Q.     You are not alleging that you were an employee of
>        Integrity, correct?
> **A.     No, ma'am.**
> Q.     And you're not alleging that you were an employee of
>        XTO, correct?
> **A.     I was working for XTO by a third-party.**
> Q.     Meaning you were employed by TRC, and TRC
>        subcontracted with XTO?
> **A.     Yes, Ma'am.**

(Idalski Decl., Exh. A.[Glass Deposition], at 62:15-23).

Plaintiff also testified that he was not working in a yard managed or owned by Integrity,

and the pipeline project was not owned or operated by Integrity:

> Q.     What type yard were you operating at?
> **A.     It was XTO's pipe yard.**

(Idalski Decl., Exh. A [Glass Deposition], at 31:24-25). Given Plaintiff's repeated testimony that

Integrity was not his employer, and that he was not alleging otherwise, Plaintiff has not, and

cannot, establish a retaliatory discharge claim against Integrity.

Thus, even assuming that Plaintiff's allegation that Criddle told him to get off the site can be proven, Integrity cannot be liable for Criddle's conduct because it is undisputed that  Integrity was not Plaintiff's employer, and only employers can be liable for retaliatory discharge. Moreover, even assuming that Criddle was an employee of Integrity in June of 2019, he  could not have been an "agent" of TRC, Plaintiff's employer, because there was no business relationship between TRC and Integrity at that time. Scruggs Decl., at ¶ 6. Accordingly, there is no question that the retaliatory discharge claim fails and must be dismissed against Integrity.[5]

**2.** ***Plaintiff's Retaliatory Discharge Claim Additionally Fails because Plaintiff Admitted that he Failed to Identify His Disability or to Seek an Accommodation.***

As a general rule, in New Mexico, employment is at will and can be terminated by either the employer or the employee for any reason, or for no reason at all. *See Trujillo v. N. Rio Arriba Elec. Coop., Inc.,* 2002–NMSC–004, ¶ 22. However, New Mexico courts "recognize the common-law tort of retaliatory discharge, which 'requires an employee to show that he was discharged because he performed an act that public policy authorizes or encourages.'" *Minor v. Legal FACS*, No. CIV 22-0120 JCH/SMV, 2012 WL 13080082, at *4 (D.N.M. June 6, 2012). "A retaliatory discharge cause of action [is] recognized in New Mexico as a *narrow exception* to the at-will rule [.]" *Silva v. Albuquerque Assembly & Distribution Freeport Warehouse Corp.,* 1987-NMSC-045, ¶ 13, 106 N.M. 19, 738 P.2d 513 (emphasis added). Under this cause of action, an employee must (1) identify a specific expression of public policy which the discharge violated; (2) demonstrate that he or she acted in furtherance of the clearly mandated public policy; and (3) show that he or she was terminated as a result of those acts. *See Lihosit v. I*

---

[5] Although Criddle has not appeared and Integrity does not represent him in this matter, Plaintiff's retaliatory discharge claims against Criddle must inevitably fail for similar reasons. Plaintiff has not alleged, and cannot show, that Criddle was Plaintiff's employer, and thus a retaliatory discharge claim cannot lie against Criddle.

*& W, Inc.,* 1996-NMCA-033, ¶ 7, 121 N.M. 455, 913 P.2d 262; *Vigil v. Arzola,* 1983-NMCA-082, 102 N.M. 682, 699 P.2d 613, *rev'd in part on other grounds,* 1984–NMSC–090, 101 N.M. 687, 687 P.2d 1038, *overruled on other grounds by Chavez v. Manville Prods. Corp.,* 1989-NMCA-050, 108 N.M. 643, 777 P.2d 371.

The public policy that Plaintiff identifies as the basis for his retaliatory discharge claim is the New Mexico Human Rights Act. *See* [Doc. 40, at ¶30]. Courts have noted that, under this statute, "the interactive process must ordinarily begin with the employee providing notice to the employer of the employee's disability and any resulting limitations…." *Trujillo v. Northern Rio Arriba Elec Co-op, Inc.* 131 N.M. 607, 614 (Sup. Ct. N.M. 2001) (reversing judgment because the "terse language" of a return to work certificate was "insufficient" as a matter of law to put the employer on notice that the employee was requesting an accommodation under the New Mexico Human Rights Act). "Where the disability, resulting limitations, and necessary reasonable accommodations, are not open, obvious, and apparent to the employer…the initial burden rests primarily upon the employee, or his health-care provider, to specifically identify the disability and resulting limitations, and to suggest the reasonable accommodations.").

Plaintiff testified at his deposition that he did not notify his employer of his disability and *never* sought an accommodation with respect to that disability, stating as follows:

> Q.    And when you applied --- or when you began working for TRC, did you disclose that you had diabetes?
> **A.    No, ma'am.**
> Q.    Did you ask for permission or seek an accommodation to bring Little Dog with you to work for TRC?
> **A.    No, ma'am.**
> Q.    So you just brought her to work with you and that was that?
> **A.    Yes, ma'am.**

(Idalski Decl., Exh. A [Glass Deposition], at 48:22-49:5).

Given this testimony, Plaintiff cannot establish a violation of the New Mexico Human Rights Act. *Trujillo, supra,* at 614-15 (reversing judgment in favor of employee under Human Rights Act because employee failed to meet his affirmative obligation to notify employer of disability and affirmatively seek an accommodation).

Plaintiff's failure to establish a violation of the state Human Rights Act additionally undermines his retaliatory discharge claim as a matter of law. *Id.* ("Our holding on the claims under the Human Rights Act disposes of [plaintiff's] claim for retaliatory discharge. Because Mr. Trujillo's discharge did not violate the Human Rights Act, the claim of wrongful discharge in violation of public policy must fail."); *see also Sanders v. Arneson Prods., Inc.*, 91 F.3d, 1351, 1354 (9th Cir. 1996) (there can be "no public policy claim against employers who have not violated the law").

**C.    Plaintiff Fails to State a Claim and Admittedly Cannot Legally  Establish that Integrity Tortiously Interfered with Plaintiff's Purported Contract with TRC.**

Plaintiff suffers the same deficiencies with regard to his claim for tortious interference with contract claim as he does with his retaliatory discharge claim.  Again, he does not plead facts that would support the elements of this claim including that Integrity(or even Criddle) had knowledge of the contract, and then swore under oath in his deposition that he does not have knowledge.  These admissions prevent him from curing any defects in his already twice amended complaint and require dismissal.

A tortious interference with contract claim requires Plaintiff to establish that (1) Integrity had "knowledge of the contract" between Plaintiff and TRC; (2) performance of the contract was refused; (3) Integrity "played an active and substantial part" in causing Plaintiff to lose the benefits of" the contract; (4) damages flowed from the breached contract; and, (5) Integrity induced the breach "without justification or privilege to do so." *See, e.g., Wolf v. Perry*, 1959-

NMSC-044, ¶¶18-21, 65 N.M. 457, 339 P.2d 679; *Ettenson v. Burke*, 2001-NMCA-003, ¶ 14, 130 N,M. 67; 17 P.3d 440.

   1.     ***Plaintiff Cannot Establish that Integrity had Knowledge of Plaintiff's Contract with TRC.***

   "One cannot be held liable for the tort of inducing a breach of contract unless he has knowledge of the contract; without such knowledge the requisite intension is absent." *Wolf,* 195-NMSC-044, ¶ 19. Thus, Plaintiff must plead and prove facts sufficient to establish that Integrity had knowledge of his contract with TRC.   Despite multiple amendments to his complaint, Plaintiff includes only a bare allegation that Integrity "had knowledge of the employment contract between TRC and plaintiff."   [Doc. 40, at ¶ 19]. Plaintiff offers no additional factual allegations to support this conclusory recitation of the element and to illustrate how Integrity "knew" or even could have known of any contract between TRC and Plaintiff. [Doc. 40]. Moreover, after more than a year of litigation, it was clear that Plaintiff was wholly unaware of anyone on site who worked for Integrity. Indeed, in his December 2022 deposition, Plaintiff asserted multiple times that he believed that Tommie Criddle worked for XTO.  Idalski Decl, Exh. A [Glass Deposition], at 39:15-41:10. He also specifically testified twice that he did not know who Criddle worked for, much less link Criddle with Integrity:

   Q.     Any do you know if Tommie Criddle was an employee of
          Integrity Inspection Solutions?
   **A.     I do not know who Tommie worked for on third-party.**

                              ***

   Q.     Any when you say that you've dealt with him through
          Tommie Criddle, what do you mean by that?
   **A.     I'm assuming Tommie Criddle works for Integrity
          because you're asking questions about it. I don't know
          who Tommie worked for.**

(Idalski Decl., Exh. A [Glass Deposition], at 42:14-17; 58:9-13).

Plaintiff even testified that he had "never dealt with Integrity". *Id.*, at 58:7. Given this testimony, Plaintiff has not, and cannot, offer even a shred of proof that Integrity ever had any knowledge of a contract between himself and TRC. He thus cannot establish even the threshold element of his tortious interference claim against Integrity. For this reason alone, dismissal of the tortious interference claim against Integrity is warranted.

        2.       ***Plaintiff Cannot Establish that Integrity Played an Active and Substantial Part in Causing Plaintiff to Lose the Benefits of the Contract.***

Even if Plaintiff could provide even a scintilla of evidence that Integrity had knowledge of his contract with TRC, and he cannot, Plaintiff cannot establish that Integrity played an active and substantial part in Plaintiff's loss of the benefits of the contract. To do so, Plaintiff must establish "some voluntary conduct on the part of the defendant, some overt act which influences the promisor to breach his contract." *Wolf*, 1959-NMSC-044, ¶21 (citations omitted). Moreover, the act must have proximately caused the injury. *Id.* at ¶ 22.

In his Second Amended Complaint, Plaintiff has not alleged that Integrity itself engaged in any overt act. Instead, at most, Plaintiff alleges that Criddle "acted as [Integrity's] agent when he forced TRC to terminate Travis." [Doc. 40, at ¶ 20]. Whatever act Criddle may have engaged in (and Integrity reserves its right to dispute Plaintiff's narrative), Criddle had no authority from Integrity to "force TRC" to undertake any disciplinary action, much less termination, with respect to Plaintiff. *See* Scruggs Decl., at ¶¶ 3-4. Under such circumstances, Plaintiff also cannot establish this element of his tortious interference with contract claim against Integrity.

        3.       ***Plaintiff Cannot Establish that Integrity Had no Justification or Privilege.***

This Court has noted that a tortious interference claim requires that a Plaintiff establish "improper motive to harm the plaintiff, or improper means." *Five Star Automatic Fire*

*Protection, LLC v. Nuclear Waste Partnership, LLC*, No. 14-622 JCH/GBW, 2016 WL 9449457, at *4 (D.N.M. May 13, 2016). To establish improper motive, a plaintiff bringing an intentional tort claim must establish "that the defendant's sole intention is to harm the plaintiff." *Id.* Improper means, which infers improper motive based upon the conduct at issue, includes "violence, threats or other intimidation, deceit or misrepresentation, bribery, unfounded litigation, defamation, or disparaging falsehood" *Id.* Other courts have tied the improper motive / means requirements to the "without justification" prong. *Ettenson*, 2001-NMCA-003, ¶14 (citations omitted); RESTATEMENT (SECOND) OF TORTS § 767 cmt. c (1977).

Plaintiff's Second Amended Complaint does not include an allegation that, even if proved, would be sufficient to establish this element of the tortious interference with contract claim.   There is no allegation that Integrity, or even Criddle, had the sole intention to harm Plaintiff (improper motive), or that Integrity, or even Criddle, used violence, threats, intimidation, defamation, bribery, litigation or falsehoods (improper means).

Plaintiff apparently attempts to allege improper means in Paragraph 21 of his Second Amended Complaint by alleging that "defendants' conduct…caused the termination of plaintiff's employment with TRC through deceit or misrepresentation that the accident with the dropped pipe was good cause to terminate plaintiff."  [Doc. 40, at ¶ 21]. This allegation is insufficient to allege tortious interference with contract by *Integrity*. As a threshold matter, at no point in his Complaint does Plaintiff link an alleged misrepresentation about dropped pipe safety incident to Integrity. Instead, Plaintiff alleges that TRC told him that "*XTO* is making us take you off the job, due to an alleged safety violation." [Doc. 40, at ¶15] (emphasis added). Plaintiff then admits through his Complaint that he had "dropped some pipe as he was unloading it from a truck." [Doc. 40, at ¶16]. Nowhere in the Complaint does Plaintiff allege that Integrity, or even Criddle,

made a misrepresentation to TRC about the dropped pipe. Indeed, Plaintiff does not allege that Integrity, or Criddle, was even *aware* of the dropped pipe incident.

To the extent that the "deceit or misrepresentation" about the dropped pipe incident was a misrepresentation *to Plaintiff* (*i.e.*, that a misrepresentation was made to Plaintiff about the reason for his termination), then that would lack the causal element necessary to give rise to a tortious interference with contract. Put simply, merely telling Plaintiff that the pipe drop was good cause to terminate him could not have caused the actual termination.

Given the multiple, fatal deficiencies in Plaintiff's tortious interference with contract claim against Integrity, dismissal or judgment in favor of Integrity and against Plaintiff on this claim is warranted.

D.    **Plaintiff's Late Amendment to Add Integrity as A Defendant Was and Continues to be Prejudicial to Integrity and Further Amendment Would be Futile.**

Because Integrity was not a party at the time that this Court was considering Plaintiff's second motion to amend, Integrity could not argue the futility or prejudice of the proposed amendment to add Integrity at that time. On December 6, 2022, this Court's granted Plaintiff's Second Motion to Amend Complaint. [Doc. 39]. In its Order, the Court noted that "XTO has not proven or even contended that the actual amendments—that is, the claims against [Integrity]—are futile." ECF No. 39, at 7.  The Court thus denied the futility argument, but expressly stated that the denial of the futility argument was "without prejudice." (*Id*.)

Plaintiff amended his complaint to add Integrity as a defendant well after the April 1, 2022 deadline to amend had passed. *See, e.g.,* [Doc. 18, filed 4/11/22 (Order Setting Case Management Deadlines and Discovery Parameters); Doc. 14, filed 4/4/11 (Joint Status Report by Travis Glass). Even if Plaintiff's request had been timely, and it was not, the right to amend is not absolute. A motion to amend should be denied if amendment results from "undue delay, bad

faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Minter v. Prime Equip. Co.*, 451 F. 3d 1196, 1204 (10th Cir. 2006) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "If…delay in amending results in prejudice to the opposing party, denial of the motion is justified." *Federal Ins. Co. v. Gates Learjet Corp.*, 823 F.2d 383, 387(10th Cir. 2011). Likewise, "denial of leave to amend is appropriate when the party filing the motion has no adequate explanation for the delay." *Minter*, *supra*, 451 F.3d at 1206.

The prejudice resulting from Plaintiff's delay is transparent. Integrity's entry into the case comes nearly two years after the litigation was initially filed [Doc. 1-1], after Plaintiff's deposition took place, and after former defendant and alleged "joint" employer XTO settled with Plaintiff. *See* [Doc. 47] (Notice of Settlement. Indeed, XTO is no longer a party to this lawsuit. [Doc. 56] (Stipulation of Dismissal *with Prejudice* by XTO Energy). Moreover, Plaintiff has not even bothered to serve another defendant, Tommie Criddle, who this Court has indicated may be dismissed as a result of Plaintiff's failure. *See* ECF No. 59 (Order to Show Cause re: Criddle).[6] Thus, neither the party who TRC stated required Plaintiff's termination (XTO), nor the individual defendant who Plaintiff alleges had a conversation with him about the dog (Criddle), may remain in the case by the time Integrity has an opportunity to start discovery.

In addition to the prejudice to Integrity resulting from the departures or nonappearances of other defendants who were the subject of key allegations in Plaintiff's complaint, Plaintiff's delay has compromised other discovery that might have been otherwise available to Integrity. In Plaintiff's December 2022 deposition (which occurred prior to Integrity's entry into this case),

---

[6] As Criddle does not work for Integrity, Scruggs Decl., ¶5, Integrity will have no ability to compel his participation as a witness in this lawsuit.

Plaintiff on multiple occasions indicated that he could not remember answers to the most basic questions because "we have drug this out a long time." *See, e.g.,* Idalski Decl., Exh. A [Glass Deposition], at 31:1-13 (concerning when Plaintiff was hired by TRC); 37:8-18 (concerning pay); 49:25-50:6 (concerning who Plaintiff might have told about his diabetes). Plaintiff's recollection of events is unlikely to become better with the passage of time. Amendment to add Integrity was improvidently granted, and any further request by Plaintiff to amend to address the still existing deficiencies in his Second Amended Complaint should be summarily denied.

## IV.   <u>CONCLUSION</u>

Plaintiff has conceded that his employer was TRC, that after his alleged conversation with Criddle, his supervisor at TRC told him to stay on the job because Criddle had not thrown him off the job, and that the next day TRC told him that it was XTO (but not Integrity) that was "making" TRC terminate Plaintiff. Plaintiff has not alleged a single fact that could potentially establish that Integrity was even aware of any contract between Plaintiff and TRC, much less provide allegations which, if proven, might establish the other elements of his claims.  For these and the other reasons identified in this motion, dismissal of Plaintiff's claims against Integrity, or, in the alternative, judgment in favor of Integrity and against Plaintiff is warranted.

92716665v.3

DATED:  April 3, 2023                    Respectfully submitted,


By:  */s/ Melissa M. Kountz*
⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
Glenn A. Beard
New Mexico State Bar No. 9395
Melissa M. Kountz
New Mexico State Bar No.
RODEY, DICKASON, SLOAN, AKIN
   & ROBB, P.A.
P. O. Box 1888
Albuquerque, New Mexico  87103
Telephone:  (505) 765-5900
Facsimile:  (505) 768-7395
Email:  gbeard@rodey.com
              mkountz@rodey.com
Annette A. Idalski (association of
Attorney Licensed Outside the District
completed)
Attorney In Charge
Texas Bar No. 00793235
SEYFARTH SHAW LLP
1075 Peachtree Street, N.E., Suite 2500
Atlanta, GA  30309-3958
Telephone:   (404) 885-1500
Facsimile:    (404) 892-7056
Email:  aidalski@seyfarth.com

Kathryn Christine Palamountain
(association of Attorney Licensed Outside
the District completed)
Texas Bar No. 24061004
S.D. Tex. No. 892855
SEYFARTH SHAW LLP
700 Milam Street, Suite 1400
Houston, Texas  77002-2812
Telephone:  (713) 225-2300
Facsimile:  (713) 225-2340
Email:  cpalamountain@seyfarth.com

ATTORNEYS FOR DEFENDANT
INTEGRITY INSPECTION SERVICES,
LLC

92716665v.3

## CERTIFICATE OF CONFERENCE

I hereby certify that on April 3, 2023, I conferred with counsel for Plaintiff, who stated that Plaintiff is opposed to the relief requested in this motion and the proposed order.  I also conferred with counsel for XTO on April 3, 2023, who stated that XTO is not opposed to the relief requested in this motion and the proposed order.

/s/ *Kathryn Christine Palamountain*
Kathryn Christine Palamountain

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was filed electronically and has been served on all counsel who have consented to the electronic service through the Court's ECF system, on this 3rd day of April, 2023:

Timothy L. White
VALDEZ AND WHITE LAW FIRM, LLC
124 Wellesley Dr. SE
Albuquerque, New Mexico  87106

ATTORNEY FOR PLAINTIFF

Kelli C. Fuqua
LITTLER MENDELSON, P.C.
100 Congress Ave., Suite 1400
Austin, Texas  78701

Robert Shawn Oller
LITTLER MENDELSON, P.C.
2425 East Camelback Road, Suite 900
Phoenix, Arizona  85016

Charlotte A. Lamont
MILLER STRATVERT P.A.
500 Marquette N.W., Suite 1100
Albuquerque, New Mexico  87102

ATTORNEYS FOR XTO ENERGY

/s/ *Kathryn Christine Palamountain*
Kathryn Christine Palamountain

92716665v.3