**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

| | |
|---|---|
| TRAVIS GLASS, §<br>§<br>Plaintiff, §<br>§<br>§ Civil Action No.: 1:21-cv-00543-JCH-JMR<br>§<br>v. §<br>§<br>XTO ENERGY, INC., and TOMMIE §<br>CRIDDLE, individually and as agent or §<br>employee of XTO ENERGY, INC. or as §<br>agent or employee of INTEGRITY §<br>INSPECTION SERVICES, LLC and §<br>INTEGRITY INSPECTION SERVICES, §<br>§<br>Defendants. §<br>§ | |

**DECLARATION OF ANNETTE A. IDALSKI IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PURSUANT TO 28 U.S.C. § 144**

I, Annette A. Idalski, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that:

1. I am a partner at the law firm of Seyfarth Shaw, LLP. Seyfarth represents Defendant Integrity Inspection Services, LLC in this matter.

2. Attached at Exhibit A are selected portions of the official reporter's transcript of the December 23, 2022 Oral Deposition of Travis W. Glass (Via Zoom) in this matter.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 3, 2023.

*/s/ Annette A. Idalski*
Annette A. Idalski

# EXHIBIT A

Case 1:21-cv-00543-JCH-JMR   Document 60-1   Filed 04/03/23   Page 3 of 19

GLASS vs. XTO ENERGY, et al.                           Travis W. Glass
1:21-CV-00543 JCH-JHR                               December 23, 2022

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

TRAVIS GLASS,

    Plaintiff,

vs.                                        1:21-cv-00543 JCH-JHR

XTO ENERGY, and TOMMIE CRIDDLE,
individually and as agent of XTO Energy,

    Defendants.

ORAL DEPOSITION OF TRAVIS W. GLASS (VIA ZOOM)

Friday, December 23, 2022
9:24 a.m.
7113 Cleghorn Road, Northwest
Albuquerque, New Mexico 87120

    PURSUANT TO THE FEDERAL RULES OF CIVIL PROCEDURE
this deposition was:

TAKEN BY:        KELLI FUQUA, ESQ.
                 ATTORNEY FOR DEFENDANTS

REPORTED BY:     CHRISTOPHER R. SANCHEZ, CCR (VIA ZOOM)
                 New Mexico CCR No. 217
                 WILLIAMS & ASSOCIATES, LLC
                 317 Commercial St., NE, Suite G-101
                 Albuquerque, New Mexico 87102
                 (505) 843-7789
                 www.williamsnm.com

Case 1:21-cv-00543-JCH-JMR   Document 60-1   Filed 04/03/23   Page 4 of 19

Page 2

GLASS vs. XTO ENERGY, et al.　　　　　　　　　　　　　　　Travis W. Glass
1:21-CV-00543 JCH-JHR　　　　　　　　　　　　　　　　　December 23, 2022

```
                    A P P E A R A N C E S

 For the Plaintiff:

         VALDEZ & WHITE LAW FIRM, LLC
         Attorneys at Law
         124 Wellesley Dr., SE
         Albuquerque, New Mexico 87106
         (505) 345-0289
         BY:  TIMOTHY L. WHITE, ESQ. (VIA ZOOM)
              tim@valdezwhite.com


 For the Defendants:

         LITTLER MENDELSON, PC
         Attorneys at Law
         2425 E. Camelback Rd., Suite 900
         Phoenix, Arizona 85016
         (602) 474-3600
         BY:  KELLI FUQUA, ESQ. (VIA ZOOM)
              kfuqua@littler.com
              SHAWN OLLER, ESQ. (VIA ZOOM)
              soller@littler.com


 Also Present via Zoom:

         JACLYN CAUGHERTY (IN-HOUSE COUNSEL FOR EXXON)
         MINDY WETZEL (LITTLER MENDELSON)
         EVAN GLASS
```

Case 1:21-cv-00543-JCH-JMR   Document 60-1   Filed 04/03/23   Page 5 of 19

Page 4

GLASS vs. XTO ENERGY, et al.                                    Travis W. Glass
1:21-CV-00543 JCH-JHR                                        December 23, 2022

1       THE REPORTER: Counsel, before we begin, can I have a
2  stipulation on the record at that the witness can be sworn
3  remotely?
4       MR. WHITE: Plaintiff stipulates.
5       MS. FUQUA: Defendant stipulates as well.
6                     TRAVIS W. GLASS
7       (After having been duly sworn under oath, was
8       questioned and testified as follows:)
9                       EXAMINATION
10 BY MS. FUQUA:
11      Q.   Good morning Mr. Glass. My name is Kelli Fuqua.
12 I am one of the attorneys who represents XTO in the lawsuit
13 that you have filed. Thank you for joining us today on this
14 Zoom deposition. Although we are not in a courtroom and it can
15 be a little weird doing these things virtually, as you just
16 swore, your testimony is under oath today and the oath that you
17 took subjects you to the penalty of perjury, the same as if we
18 were sitting in a courtroom. Do you understand that?
19      A.   Yes, ma'am.
20      Q.   And on that note, if you do answer a question
21 today, I'm going to assume that you understood my question and
22 are answering it truthfully. So if I ask a question that is
23 confusing to you or if you don't understand it, or if we have
24 any sort of connectivity issues or anything, please ask me to
25 repeat it so that I can make sure you understand my question.

Page 30

GLASS vs. XTO ENERGY, et al.  
1:21-CV-00543 JCH-JHR

Travis W. Glass  
December 23, 2022

1  Q. The house that you currently own and live in?
2  A. Yes, ma'am.
3  Q. Okay. And so tell me about what happened in that
4  proceeding.
5  A. I wasn't working and it went into foreclosure.
6  Before I lost it, I got back to work and caught it up.
7  Q. Okay. And you said that you didn't have an
8  attorney in that case. You just represented yourself?
9  A. Yes. It never went to court.
10 Q. It never went to court. Okay. So you were able
11 to make the payments on the house before you ever had a trial
12 or anything like that.
13 A. Yes, ma'am.
14 Q. Aside from this foreclosure, have you been
15 involved in any other legal proceedings that we have not
16 discussed already?
17 A. I don't believe so.
18 Q. I'm going to stop showing you those
19 interrogatories for now. Okay. So I want to talk to you a
20 little bit about your employment with TRC and your relationship
21 with XTO and all of that. So it's my understanding that you
22 were employed by a company called TRC; is that correct?
23 A. Yes, ma'am.
24 Q. What was your job for TRC?
25 A. Unloading pipe at the railhead in the pipe yard.

Case 1:21-cv-00543-JCH-JMR   Document 60-1   Filed 04/03/23   Page 7 of 19

Page 31

GLASS vs. XTO ENERGY, et al.  
1:21-CV-00543 JCH-JHR

Travis W. Glass  
December 23, 2022

1    Q.   When were you hired by TRC for that job?

2    A.   Approximately a month to three months prior to

3  being terminated.

4    Q.   Okay.

5    A.   I don't remember the dates.

6    Q.   Do you recall it being sometime in 2019?

7    A.   It very well could have been, but without looking

8  at a calendar I couldn't tell you. I can't say for sure.

9    Q.   So you're saying you were hired, though, by TRC

10 and you only worked there for a month. Is that accurate?

11   A.   I said between a month to three months. I don't

12 remember. This was two or three, four years ago now. We have

13 drug this out a long time.

14   Q.   Who hired you at TRC?

15   A.   Terry Carter.

16   Q.   And where were you working before TRC?

17   A.   I don't remember. Too far back.

18   Q.   Why were you seeking a job with TRC?

19   A.   Because I was unemployed.

20   Q.   And you said that your job was unloading pipe at

21 the railhead in the pipe yard. Do you have a formal title?

22   A.   I would have fell under -- it's a very broad

23 title, but heavy equipment operator.

24   Q.   What type yard were you operating at?

25   A.   It was XTO's pipe yard.

Case 1:21-cv-00543-JCH-JMR   Document 60-1   Filed 04/03/23   Page 8 of 19

Page 32

GLASS vs. XTO ENERGY, et al.                                Travis W. Glass
1:21-CV-00543 JCH-JHR                                       December 23, 2022

1    Q.  Do you remember where it was located?
2    A.  I think the road is Hobbs highway, but I'm not a
3  hundred percent sure that's the name of the road.
4    Q.  And I understand that your position or your title
5  would be heavy equipment operator and your job was unloading
6  pipe.  So were you using some sort of heavy equipment like a
7  forklift or something to move pipe, or how did that work?
8    A.  I used a loader forklift and an excavator with
9  what's called a Deckhand on it.
10   Q.  And how heavy are these pipes?  What are we
11 talking about?
12   A.  I think I did everything from four-inch to
13 twelve-inch, and I have no idea what they weighed.
14   Q.  How long are they?
15   A.  They varied.  Some of them were relatively short,
16 to probably 20 or 30 feet.
17   Q.  So were you able to pick them up by hand or is
18 your heavy equipment required in order to move these pipes?
19   A.  You had to have equipment.
20   Q.  What are they made of?
21   A.  Steel.
22   Q.  And what are they used in?
23   A.  Pipe-laying application.
24   Q.  For oil?
25   A.  I don't know what they were going to run through

Case 1:21-cv-00543-JCH-JMR   Document 60-1   Filed 04/03/23   Page 9 of 19

Page 33

GLASS vs. XTO ENERGY, et al.                              Travis W. Glass
1:21-CV-00543 JCH-JHR                                    December 23, 2022

1  them.
2          Q.    And you said Terry Carter hired you.  What was
3  Terry Carter's role?
4          A.    He is the owner of TRC.
5          Q.    Owner of TRC?
6          A.    Yes, ma'am.
7          Q.    It's my understanding that you had two incidents
8  where the pipelines were dropped or where you dropped the
9  pipelines.  Is that accurate?
10         A.    No, ma'am.
11         Q.    Okay.  Why is that inaccurate?
12         A.    I dropped one piece of pipe.
13         Q.    So the part that I got wrong was that it was two
14 times.  It is just one time that you dropped a piece of pipe?
15         A.    Yes, ma'am.
16         Q.    And why is that problematic?
17         A.    What was that?
18         Q.    Why is that problematic or why is that a safety
19 violation, if it is?
20         A.    Obviously, it's heavy pipe.  You skin the coating
21 up.  There's just nothing good about dropping a piece of pipe.
22         Q.    Were you formally written up for that incident?
23         A.    No, ma'am.
24         Q.    So it was just a verbal coaching?
25         A.    It wasn't even that.  It was determined that the

Case 1:21-cv-00543-JCH-JMR   Document 60-1   Filed 04/03/23   Page 10 of 19

Page 37

GLASS vs. XTO ENERGY, et al.
1:21-CV-00543 JCH-JHR

Travis W. Glass
December 23, 2022

1  disciplined or not?
2       A.    No, ma'am, other than what he told me.
3       Q.    Which is that he didn't have to take a drug
4  test?
5       A.    He wanted to know why I had to take a drug test
6  because nobody else had.  He didn't like it any more than I
7  did.
8       Q.    As a heavy equipment operator for TRC, what was
9  your salary?  What were you getting paid?
10      A.    I do not remember.
11      Q.    Do you remember the frequency of your pay?
12      A.    Weekly.
13      Q.    Were you paid by the hour, by the day or at some
14 other rate?
15      A.    By the hour, daily rate for per diem and daily
16 rate for truck pay.
17      Q.    What were you paid by the hour?
18      A.    I do not remember.
19      Q.    What was your daily rate for per diem?
20      A.    I'm not for sure, but it probably was $100 a day.
21      Q.    But you don't know, sitting here today, if that's
22 accurate?
23      A.    No, ma'am.
24      Q.    And then you said daily rate for truck pay was
25 the other component of your compensation?

Case 1:21-cv-00543-JCH-JMR   Document 60-1   Filed 04/03/23   Page 11 of 19

Page 39

GLASS vs. XTO ENERGY, et al.                                    Travis W. Glass
1:21-CV-00543 JCH-JHR                                       December 23, 2022

1   Q.  Were you ever disciplined for performance or
2   behavior issues while you worked for TRC?
3   A.  No, ma'am.
4   Q.  Did you ever receive any sort of promotions?
5   A.  No, ma'am.
6   Q.  Was there any sort of bonus element to your
7   compensation or was it strictly what you already told me with
8   the paid by the hour, daily rate for per diem and the daily
9   rate for truck pay?
10  A.  I didn't understand that first part of that
11  question.
12  Q.  Aside from those elements of your pay, did you
13  receive any bonuses?
14  A.  No, ma'am.
15  Q.  And did you interact with any employees of XTO,
16  as far as you know, in your job for TRC?
17  A.  Tommie Criddle.
18  Q.  What is the basis for your belief that Tommie
19  Criddle was an XTO employee?
20  A.  He ran the pipe yards.
21  Q.  Do you have any other reason to believe that
22  Tommie Criddle was an XTO employee?
23  A.  Just the way the oil patch works.  He was third
24  party, but he was over the pipe yard.  He is the man we
25  answered to.  He is the man that given us directions.  He's

Case 1:21-cv-00543-JCH-JMR   Document 60-1   Filed 04/03/23   Page 12 of 19

Page 40

GLASS vs. XTO ENERGY, et al.                                    Travis W. Glass
1:21-CV-00543 JCH-JHR                                      December 23, 2022

1  basically the boss out there over my contractor.
2        Q.  Did Tommie ever tell you that he was employed by
3  XTO?
4        A.  Tommie I don't think ever directly told me he was
5  employed by XTO.
6        Q.  Did anyone else ever tell you that Tommie was
7  employed by XTO?
8        A.  My supervisor said that he's the boss.  We've got
9  to do it his way.  We're working for XTO, so he must be the
10 boss and he must be affiliated with XTO.
11       Q.  Your supervisor said he must be the boss, he must
12 be affiliated with XTO?
13       A.  No.  No, ma'am.  I said my supervisor said he is
14 the boss and we'll do it his way.  So if we're working for XTO,
15 he must be the boss for XTO.
16       Q.  So when you're saying he must be the boss for
17 XTO, that's you speculating based on Tommie's role at the yard;
18 is that right?
19       A.  I guess if you want to put it that way, I'll
20 agree to that.
21       Q.  Well, I'm asking you.  You don't have any
22 personal knowledge of Tommie Criddle being an employee of XTO,
23 correct?
24       A.  I have told you Tommie Criddle is third-party
25 inspection.  XTO hires him to run the job.  That makes him a

Case 1:21-cv-00543-JCH-JMR   Document 60-1   Filed 04/03/23   Page 13 of 19

Page 41

GLASS vs. XTO ENERGY, et al.                                    Travis W. Glass
1:21-CV-00543 JCH-JHR                                           December 23, 2022

1  boss for XTO. They are working for XTO.
2          Q.   I'm going to ask you my question and I ask that
3  you listen to it carefully because I don't think you're
4  understanding. I'm asking you, do you specifically have any
5  personal knowledge that Tommie Criddle was an employee of
6  XTO?
7          MR. WHITE:   Asked and answered.
8          A.   Yes, ma'am. I understand how the oil patch
9  works. He is third-party. XTO contracts him to boss us. He
10 is working for XTO and he is over me.
11         Q.   (By Ms. Fuqua)   Have you seen a contract
12 between --
13         A.   You are not understanding.
14         Q.   Please let me finish my question.
15         A.   You are not understanding.
16         Q.   Please let me finish my question. Have you ever
17 seen a contract between Tommie Criddle and XTO?
18         A.   No, ma'am.
19         Q.   And you've never personally seen any sort of
20 paperwork between Tommie Criddle and XTO, correct?
21         A.   No, ma'am.
22         MR. WHITE:   Ms. Fuqua, we've been at this for about
23 an hour-and-a-half. I could use a few-minutes break when you
24 get to a place that is feasible for that.
25         MS. FUQUA:   We can break now. That's no problem.

Case 1:21-cv-00543-JCH-JMR   Document 60-1   Filed 04/03/23   Page 14 of 19

Page 42

GLASS vs. XTO ENERGY, et al.
1:21-CV-00543 JCH-JHR

Travis W. Glass
December 23, 2022

1         (A recess was taken from 10:34 to 10:47.)

2      Q.   (By Ms. Fuqua)  Okay.  Mr. Glass, have you ever

3  heard of a company called Integrity Inspection Solutions or

4  Integrity?

5      A.   I've heard the name.

6      Q.   You have heard the name?

7      A.   Yes, ma'am.

8      Q.   Do you know what that company does?

9      A.   My understanding is they're an inspection

10 company.

11     Q.   And do you know the name because they've worked

12 on sites that you've worked on before?

13     A.   I don't know where I know the name from.

14     Q.   And do you know if Tommie Criddle was an employee

15 of Integrity Inspection Solutions?

16     A.   I do not know who Tommie worked for on

17 third-party.

18     Q.   Did you ever fill out any sort of paperwork that

19 had XTO logos on it?

20     A.   I do not remember either way.

21     Q.   Did Tommie ever present you with any sort of

22 paperwork that had XTO logos on it?

23     A.   I don't remember.  Our pipe sheets had an XTO

24 logo on them.  I don't remember for sure if we had sheets on

25 the pipe.  I don't know.

Case 1:21-cv-00543-JCH-JMR   Document 60-1   Filed 04/03/23   Page 15 of 19

Page 48

GLASS vs. XTO ENERGY, et al.
1:21-CV-00543 JCH-JHR

Travis W. Glass
December 23, 2022

1  Q.  And when you say that she just started alerting
2  one day, what does that mean?
3  A.  If I start to get low, she just kind of goes like
4  she wants to play, once she starts licking.  That's the way I
5  describe it.  She's jumping on me.  And if I'm sitting down,
6  she'll go to licking me all over and bouncing around.  She just
7  gets real excited.
8  Q.  And so when she does that, what do you do?  What
9  is your reaction?
10  A.  Usually I just grab candy and start eating it
11  because I know what she's telling me.  In the beginning, I
12  would grab my monitor and check my blood sugar, and over a
13  period of time she only done this when I was low.
14  Q.  Did you ever take your service dog with you to
15  work for TRC?
16  A.  Yes, ma'am.
17  Q.  Did you take your service dog to the job -- well,
18  where were you working before you began working for TRC?
19  A.  I think I was working for Holloman Construction.
20  Q.  Did you take Little Dog with you to Holloman?
21  A.  Yes, ma'am.
22  Q.  And when you applied -- or when you began working
23  for TRC, did you disclose that you had diabetes?
24  A.  No, ma'am.
25  Q.  Did you ask for permission or seek an

Case 1:21-cv-00543-JCH-JMR   Document 60-1   Filed 04/03/23   Page 16 of 19

Page 49

GLASS vs. XTO ENERGY, et al.  
1:21-CV-00543 JCH-JHR

Travis W. Glass  
December 23, 2022

1  accommodation to bring Little Dog with you to work for TRC?
2       A.   No, ma'am.
3       Q.   So you just brought her to work with you and that
4  was that?
5       A.   Yes, ma'am.
6       Q.   Did your supervisor ever say anything to you
7  about bringing Little Dog to work?
8       A.   He might have asked me about the dog. And when I
9  told him -- well, yes. Let me back up on that. No. Excuse
10 me. That was all after the fact. He might have said something
11 about the dog and I told him she was a service dog, and that
12 was the end of the conversation the best I remember.
13      Q.   Okay. And then did you ever tell anyone at XTO
14 that you had diabetes?
15      A.   No.
16      Q.   Did you tell anyone at XTO that you had a
17 disability?
18      A.   No. Or I say no, not at this point.
19      Q.   Okay. What do you mean? You mean that you did
20 at some time?
21      A.   Yes, I did, later on.
22      Q.   When did you tell -- or who did you tell at XTO
23 that you had diabetes or a disability?
24      A.   Tommie Criddle.
25      Q.   Is there anyone else that you believe worked for

Case 1:21-cv-00543-JCH-JMR   Document 60-1   Filed 04/03/23   Page 17 of 19

Page 50

GLASS vs. XTO ENERGY, et al.
1:21-CV-00543 JCH-JHR

Travis W. Glass
December 23, 2022

1  XTO that you told you had diabetes or a disability?
2          A.   I believe I told the engineer or one of her
3  people.  I don't remember who it was.
4          Q.   So did you tell the engineer or did you tell one
5  of her people?  I'm confused.
6          A.   I don't remember.  I spoke to one of them.
7          Q.   Okay.  How do you remember speaking to one of
8  them if you don't remember who you were you speaking to?
9          A.   Because I called one of them and told them that I
10 had just been run off over my service dog and they didn't want
11 to hear it.
12         Q.   You don't know who you were speaking to,
13 though?
14         A.   It was the engineer or one of the people that
15 always showed up with her.  Like I said, I don't remember.  One
16 of them gave me a business card, and I don't remember who it
17 was.
18         Q.   One of them had given you what?
19         A.   A business card.
20         Q.   When did they give you a business card?
21         A.   One time when they come out and brought us pizza
22 or burritos or whatever they brought us.
23         Q.   And that was a business card that had their name
24 and said that they were with XTO?
25         A.   Yes, ma'am.

Case 1:21-cv-00543-JCH-JMR   Document 60-1   Filed 04/03/23   Page 18 of 19

Page 58
GLASS vs. XTO ENERGY, et al.                      Travis W. Glass
1:21-CV-00543 JCH-JHR                             December 23, 2022

1  for?
2      A.   He was working for Sunland Construction.
3      Q.   Sunland?
4      A.   Yes, ma'am.
5      Q.   Did Integrity have a service dog or service
6  animal policy?
7      A.   I've never dealt with Integrity up through then
8  through Tommie Criddle.
9      Q.   And when you say that you've dealt with him
10 through Tommie Criddle, what do you mean by that?
11     A.   I'm assuming Tommie Criddle works for Integrity
12 because you're asking questions about it. I don't know who
13 Tommie worked for.
14     Q.   Are you aware of any other employees of TRC that
15 had service animals on-site for XTO?
16     A.   No, ma'am.
17     Q.   And are you aware of any other XTO employees that
18 were allowed to have service animals on-site?
19     A.   No, ma'am.
20     Q.   Did you ever make any complaints or complain to
21 anyone at TRC that you were being discriminated against because
22 of your diabetes?
23     A.   When I called the safety man and told him what
24 was going on under direction from my foreman, I don't know if
25 you would consider that a complaint or what you consider that,

Case 1:21-cv-00543-JCH-JMR   Document 60-1   Filed 04/03/23   Page 19 of 19

Page 62

GLASS vs. XTO ENERGY, et al.  
1:21-CV-00543 JCH-JHR

Travis W. Glass  
December 23, 2022

1  one second.  Paragraph 30 says, "If by operation of law or by
2  contract between TRC, XTO, Integrity and/or Cribble," which I
3  think is a typo for Criddle -- "Travis should found to be an
4  employee of XTO or Integrity, as joint employers or as an
5  integrated Enterprise, the corporate defendants are vicariously
6  responsible for the acts of Cribble."  (sic) What is the basis,
7  if any, for asserting that XTO or Integrity are joint employers
8  or Integrated Enterprise of you or Tommie Criddle?
9         MR. WHITE:  Object to form and foundation.
10         Q.  (By Ms. Fuqua)  You can answer if you know.
11         MR. WHITE:  Answer the question.
12         A.  I'm not an attorney.  I don't understand anything
13  that says.  I'm not an attorney.  I don't understand any part
14  of that.
15         Q.  You are not alleging that you were an employee of
16  Integrity, correct?
17         A.  No, ma'am.
18         Q.  And you're not alleging that you were an employee
19  of XTO, correct?
20         A.  I was working for XTO by a third-party.
21         Q.  Meaning you were employed by TRC, and TRC
22  subcontracted with XTO?
23         A.  Yes, ma'am.
24         Q.  As part of the complaint that you've filed, the
25  lawsuit that you've filed, you're seeking some sort of monetary